```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                EASTERN DISTRICT OF OKLAHOMA
```

DONNA L. ROSS,                  )
                                )
            Plaintiff,          )
                                )
v.                              )       Case No. CIV-15-249-RAW-KEW
                                )
CAROLYN W. COLVIN, Acting       )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.          )

## REPORT AND RECOMMENDATION

Plaintiff Donna L. Ross (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on May 5, 1952 and was 60 years old at the time of the ALJ's decision. Claimant completed her high school education and two years of college. Claimant has worked in the past as a licensed practical nurse. Claimant alleges an inability to work beginning September 1, 2010 due to limitations resulting from depression, anxiety, obsessive compulsive disorder, osteoarthritis, chronic fatigue, high blood pressure, pain,

3

fibromyalgia, and GERD.

## Procedural History

On October 18, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On April 26, 2012, an administrative hearing was conducted by Administrative Law Judge ("ALJ") Doug Gabbard, II in McAlester, Oklahoma. The ALJ entered an unfavorable decision on June 15, 2012. The Appeals Council denied review on March 8, 2013. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform a full range of semi-skilled work at all exertional levels with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to conduct a proper credibility determination; (2) reaching an

erroneous RFC; (3) failing to properly weigh the medical source statement offered by Claimant's treating counselor; and (4) failing to fully develop the record.

**Credibility Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of affective and anxiety disorders. (Tr. 14). The ALJ concluded that Claimant retained the RFC to perform a full range of semi-skilled work where interpersonal contact with supervisors and co-workers was on a superficial work basis with only occasional contact with the general public. (Tr. 18). After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform the representative jobs of practical nurse and hospital cleaner performed at the medium exertional levels and both of which the ALJ found to exist in sufficient numbers both regionally and nationally. (Tr. 25-26). As a result, the ALJ found Claimant was not disabled from September 1, 2010 through the date of the decision. (Tr. 26).

Claimant first contends the ALJ failed to engage in a proper evaluation of her credibility. Claimant testified that she experienced problems with her hands. Specifically, Claimant stated she had problems grasping and picking up items. She drops items because it hurts to hold onto something. (Tr. 38-39). She also

5

has problems bending, sitting, standing, and walking. If she squats, Claimant testified that she can't get back up. If she lays down for long periods of time, she must move around. (Tr. 39). Claimant stated she has trouble grasping with her hands. Her ability to lift has diminished. (Tr. 40).

Claimant testified that she does not get out much because she doesn't feel like it. She gets overly tired and is in pain. She is required to alternate sitting and standing positions every 15 to 20 minutes. Id.

Claimant also stated that she has difficulty staying focused due to anxiety. She gets "real nervous and . . . just can't think properly." (Tr. 43). Claimant gets frustrated and irritated with people and has trouble coping. She gets easily distracted. (Tr. 44).

Claimant testified that her hands hurt a lot. She would not trust herself to take a turkey out of the oven or pour a gallon of milk. (Tr. 46).

Claimant reported doing her hair and makeup, laundry, and house cleaning "only when I have to." She is unable to wash her car because it is "just too taxing on me . . . ." (Tr. 47).

Her daily routine includes laying on the couch or in bed. She estimates that she only has one good day per week when she can get

up and get out and do something besides lay on the couch or bed. If she tries to stand or sit for extended periods, she experiences pain. (Tr. 48).

Claimant also testified that she suffers from insomnia but that medication that knocks her out is effective. She testified to a history of headaches which lasts a couple of days. She attributes the headaches to stress but she doesn't know for sure. She takes medication and lays down in a dark room. (Tr. 49).

Claimant stated that she is distracted and anxious, which she believes would preclude any return to a nursing job. (Tr. 51). She anticipates that if she does get a job, she will miss work and won't be kept. (Tr. 52).

Claimant estimated she could stay on task about 25 percent of the time because of anxiety and pain. She believes her counseling has allowed her to do a little better for a while, then she gets worse again. (Tr. 53). She has changed medication quite a bit in the last couple of years. (Tr. 54).

As in most ALJ decisions, the ALJ in this case falls back on boilerplate language in stating that Claimant's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible for the reasons set forth herein." (Tr. 20). The ALJ, however, proceeded in his analysis to cite to

specific deficiencies in Claimant's testimony which ran contrary to the medical evidence. The ALJ found Claimant's mental health treatment history did not reveal any hospitalizations. She had received medication from a facility in Colorado but her treating physician did not impose significant limitations upon her. She did not obtain medical treatment in Oklahoma until August of 2011 when she presented to the Carl Albert Community Mental Health Center for depression, anxiety, decreased sleep, high and low energy, isolation, feelings of worthlessness, and suicidal ideations without a plan. The ALJ noted she continued treatment and had good efficacy of her medication. (Tr. 20, 583-84, 628-33, 672-76).

The ALJ also found inconsistencies in the fact Claimant cared for a lady as a nurse's aide while testifying to debilitating pain and a lack of activities of daily living. (Tr. 21). The ALJ discussed the lack of evidence of persistent and adverse side effects from medication. Id. While Claimant seeks to have this Court speculate as to the basis for changing medications, the fact remains that her medication regimen has proven effective.

The ALJ also questioned Claimant's belief that she suffered from fibromyalgia. As the ALJ notes, such a diagnosis requires pain in eleven of eighteen trigger points. Claimant has never been assessed as meeting this diagnostic requirement. Despite her

8

claims of body pain, the medical evidence does not support a diagnosis of fibromyalgia and casts some doubt upon her credibility of debilitating pain. (Tr. 14-15).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or

9

other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

In this case, the ALJ thoroughly discussed the discrepancies in the medical record which adversely reflected upon the credibility of Claimant's statements of limitation. The discussion contains thoughtful reasoning and careful consideration of the record. No error is found in this credibility analysis.

## RFC Determination

Claimant contends the ALJ inadequately considered Claimant's fibromyalgia as contained in the medical record in assessing his RFC. The primary reference made by Claimant pertains to the record of Dr. Serna Smith from May 4, 2006. Dr. Smith set forth Claimant's statements of weakness and fatigue. She also stated Claimant was not working and recommended Yoga once per day. Dr. Smith concluded that Claimant needed to "break this cycle of inactivity and poor diet. Has symptoms suggesting fibromyalgia.

Will try to get her a good night's sleep." (Tr. 475). Dr. Smith did not, however, perform the trigger point diagnostic examination to arrive at a definitive fibromyalgia determination. While Dr. Smith made the repeated reference to fibromyalgia, the examination was not ever done. Indeed, Dr. Smith recommended that Claimant seek exercise for treating her perceived fibromyalgia rather than inactivity. (Tr. 491).

Claimant references these "longitudinal" records to urge the inclusion of fibromyalgia as a severe impairment and to include its effects in determining limitations in the RFC. The medical evidence and required diagnostic testing is simply not in the record to support such a requirement. References to Claimant's testimony as to the severity of the condition is belied by the ALJ's credibility findings and by the lack of support in the medical record.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ

11

must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence.

**Consideration of Source Statement from Counselor**

Claimant asserts the ALJ should have given weight to the source statement provided by her counselor. On September 7, 2012, Mary Green, Claimant's counselor, provided a mental medical source statement. She concluded Claimant was markedly limited in the functional areas of the ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to

12

work in coordination with or proximity to others without being distracted by them; ability to make simple work-related decisions; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; ability to respond appropriately to changes in the work setting; ability to travel in unfamiliar places or use public transportation; and ability to set realistic goals or make plans independently of others. (Tr. 619-20). In a narrative statement, Ms. Green states Claimant gets easily distracted and "gets agitated easily when she doesn't understand what she is to or if she cannot do what she is asked." (Tr. 620).

The ALJ acknowledged Ms. Green's statement. He concluded, however, that she is an LPN and not a physician, psychologist, or psychiatrist. As a result, she is not an "acceptable source" but rather an "other source." (Tr. 23). He stated he found the information provided by Ms. Green helpful but that he was not required to give the statement significant weight. The ALJ noted Ms. Green gave no clinical signs to support her conclusions and did

13

not refer to any treatment records to support her findings. He stated Ms. Green worked under the supervision of Dr. Nacumalli, a psychiatrist, but that he did not sign the statement. He noted the medical evidence from Dr. Nacumalli did not support Ms. Green's findings but did support a conclusion that Claimant's conditions were being treated successfully with psychotropic medications. He rejected her ultimate conclusions as inconsistent with the treatment records. (Tr. 24).

Claimant contends Ms. Green's opinion should have been given "controlling weight." Claimant's suggestion has not legal foundation to support it. "Controlling weight" is only considered for "acceptable medical sources" and not "other sources" such as Ms. Green. 20 C.F.R. § 404.1527(c)(2). The ALJ demonstrated that he adequately considered Ms. Green's opinion and provided substantial evidentiary support in the medical record for not giving the opinion significant weight. No error is found in this analysis.

## Duty to Develop the Record

Claimant contends the "ALJ in this case failed to fully develop the record, and the Appeals Council in this case should have remanded the case for further development" because additional evidence was needed. Claimant fails to identify specific evidence

14

missing from the record or which should have been obtained. This argument itself fails for lack of development.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 8th day of August, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE